OPINION OF THE COURT

Per Curiam.

The issue on this appeal is whether a statement made by an accomplice, characterized as a declaration against penal interest, was properly admitted against the defendant. We conclude that it does not satisfy the tests for admission of a statement against penal interest laid down in People v Maerling (46 NY2d 289) and that the defendant’s conviction, therefore, may not stand. Because we decide that the statement cannot be *48 consider whether the defendant’s right of confrontation guaranteed by the Sixth Amendment has been violated.
The defendant was convicted after a jury trial of second degree murder and first and second degree robbery in connection with the death of a wealthy homosexual. The Appellate Division reversed the conviction and we affirm. The facts relevant to this appeal were testified to by Detectives John Toone and Carl Sgrizzi and by Thomas Gilligan, a participant in the crime who co-operated with the prosecution and was permitted to plead guilty to attempted second degree robbery. Principally as told by Gilligan the events surrounding the murder were as follows:
The victim had been at various times the friend and lover of Gilligan, Robert Hoke and one Robert Jones*. Gilligan, Hoke, and Jones, had become acquainted with the defendant and one Chris Denim. In October, 1975, at a party attended by Gilligan, Hoke, Jones, the defendant, the defendant’s brother and possibly Denim, there was a general discussion about obtaining money without labor, by means such as robbing the victim.
The next month Denim, Gilligan, Jones, and the defendant, decided to obtain money from the victim by telling him, falsely, that bail money was needed for Jones. If that did not work, they intended to rob him. At the building the defendant and Denim went upstairs to the victim’s apartment while Jones and Gilligan waited for a while in the vestibule. When they reached the apartment the defendant, holding a knife, was standing over the victim’s body. After being threatened by the defendant, Gilligan opened a file cabinet which he knew to contain valuables, then fled from the scene.
Shortly after the murder Jones was questioned by the police, but denied his own participation or having recently seen Gilligan, and offered to help the police find Gilligan. Gilligan was arrested December 3, 1975.
The defendant and Jones were separately arrested early on December 4, 1975 by Detectives Toone and Sgrizzi. According to the detectives Jones, upon seeing Gilligan and the defendant in custody, gave an account of the crime which was basically the same as that given by Gilligan at the trial. Jones thereafter testified before the Grand Jury but refused to testify at the defendant’s trial after the prosecutor declined to give consideration to his co-operation.
*49 Because Jones was unavailable at trial the detectives were permitted to recount his confession without mention of the defendant, as a declaration against penal interest. Toone, however, in testifying as to Jones’ confession, made one reference to “the defendant”, from which the jury could infer that Jones implicated Geoghegan. It is that statement by Jones which is the focus of this appeal.
In People v Maerling (supra, at p 298), we required that for a statement against penal interest to be admissible the interest compromised must be such as to "all but rule out” motive to falsify, the declarant must be conscious of the consequences of his statement at the time it is made, that only those parts which inculpate the declarant should be admitted, and that there should be an opportunity to show from the circumstances of its making that any indicia of apparent reliability are misleading. Those assurances of probative value, which might in a proper case substitute for cross-examination, were not present in this case. Additionally, the fact that Jones’ confession was not restricted to self-inculpation, but as well implicated defendant, deprives it of admissibility under Maerling.
At the time Jones’ confession was made he had already been arrested for the murder and was subject to criminal prosecution. Moreover, having seen Gilligan and Geoghegan in custody at the station house he believed the police to be already fully apprised of his own role in the crime. Thus, there was more than the “distinct possibility” we referred to in People v Settles (46 NY2d 154, 168), that he would be motivated to implicate falsely in hope of winning immunity to prosecution or a plea to a reduced charge. That achieving lenient treatment for himself was indeed Jones’ goal is demonstrated by the degree of co-operation he gave the prosecution at various stages of the proceedings.
In his initial contact with the police Jones denied his own participation and misled the police. Only under stimulus of the belief that police already knew his role in the affair did Jones acknowledge a part in the crime, and then his "confession” carefully limited his participation to the less culpable role of -waiting with Gilligan while, without their knowledge, others accomplished the actual killing.- Jones then testified on his own behalf and against the others before the Grand Jury, and did not invoke his Fifth Amendment privilege until shortly before trial when it became clear that *50 the prosecutor would afford him no consideration for his cooperation. That the particulars of Jones’ recital of the facts may be said to mirror those to which Gilligan testified may not be remarkable either, inasmuch as Gilligan too might be expected to have been disposed to implicate defendant in exchange for acceptance of his plea to a charge of robbery.
In view of the seriousness of the charges facing him and the belief that his participation in the crime was already known, it is apparent that Jones had powerful incentives to minimize his own role and to place primary blame on others. We conclude therefore, as a matter of law, that Jones had motive to falsify, and that his declaration should not be admissible to prove the guilt of another.
The order of the Appellate Division should be affirmed.

 Name used herein is fictitious for the purpose of publication. [Rep.