■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALD SCHMOTZER, Appellant. — Judgment, Supreme Court, New York County (Rosenberger, J.), rendered March 23, 1981, convicting defendant, after a jury trial, of conspiracy in the second degree, criminal possession of a controlled substance in the fifth degree, tampering with physical evidence, petit larceny, and official misconduct, and sentencing him on each count to a concurrent term of one year, affirmed. The principal issue presented on this appeal is the admissibility as a declaration against penal interest of a taped conversation found by the trial court to have occurred after the expiration of the conspiracy charged. We are satisfied that if it was error to have admitted the taped conversation, a close issue on which members of this court are in disagreement, the error was harmless. (See *People v Crimmins,* 36 NY2d 230, 241, 242.) The evidence established convincingly that three police officers participated in an arrest which led to the seizure of contraband whose unlawful diversion formed the basis of the charges against the defendant. The three officers were the principal People's witness, Reifenheiser, acting in an undercover capacity, the defendant, and Officer Jackson. Reifenheiser's detailed testimony concerning the defendant's participation in the criminal acts was impressively confirmed by an earlier tape recording properly admitted into evidence as the statement of a conspirator in furtherance of the conspiracy, which conclusively established that the unlawfully diverted contraband was to be divided among three persons. All that was added by the disputed tape recording was a specific identification of the defendant as the third person concerned with the division of the property. Under the circumstances, it seems to us extremely improbable that this evidence affected the jury's verdict. A finding of prejudice would necessarily depend on the theory that the jury might have concluded that an undercover officer, without any discernible reason to falsely incriminate a brother officer, and whose testimony with regard to the criminal acts was strongly confirmed by a tape recording establishing the participation of three individuals, for some unexplained reason falsely incriminated the defendant in lieu of an actual participant. We do not consider this "a rational possibility," much less "a significant probability". (*People v Crimmins, supra,* at pp 241, 242.) Concur — Sandler, J. P., Carro, Bloom and Fein, JJ.

Silverman, J., concurs in a memorandum as follows: The issue that troubled the court the most on this appeal was the propriety of the receipt into evidence of an 11-line portion of a tape recording of a March 30 conversation between two police officers — Reifenheiser, an undercover officer working with the office of the Special Prosecutor, and Jackson, a police officer alleged to have participated in the criminal activities (whose conviction this court has recently affirmed [85 AD2d 534]). In this conversation, Jackson told of a conversation

with defendant Schmotzer about division of some stolen marihuana. I agree that the conviction should be affirmed. I take this opportunity to state my views at somewhat greater length. In our focus on claims of particular error such as the admission or exclusion of particular bits of evidence we must not lose sight of or slight basic general principles of trial law. A defendant is entitled to a fair trial, not a perfect one. (See *People v Arce,* 42 NY2d 179, 187; *People v Dixon,* 231 NY 111, 120.) It would be difficult to call this trial unfair or substantially erroneous. There is substantial persuasive evidence of defendant's guilt, and not a shadow of evidence pointing to innocence. The objected-to tape of March 30 adds very little to the tape of March 22, recording a conversation between the same persons on the same topic as they were in the act of dividing the marihuana. Jackson's end of the March 22 conversation was properly admitted into evidence as a statement made by a coconspirator during the course of the conspiracy. Thus, if the admission of the March 30 tape was error, it was, as we all agree, harmless error. In fact I do not think it was error at all. In analyzing a problem of admissibility of evidence, we start with the often stated "principle, basic to our law of evidence, that 'All facts having rational probative value are admissible' unless there is sound reason to exclude them, unless, that is, 'some specific rule forbids' (1 Wigmore, Evidence [3d ed., 1940], p. 293). It is this general principle which gives rationality, coherence and justification to our system of evidence and we may neglect it only at the risk of turning that system into a trackless morass of arbitrary and artificial rules." (*Ando v Woodberry,* 8 NY2d 165, 167; see, also, Fed Rules Evid, rule 402 [US Code, tit 28]; Proposed Code of Evidence for State of New York, § 402; Thayer, A Preliminary Treatise on Evidence at the Common Law [1898], p 265; Richardson, Evidence [10th ed], § 5.) So that in general our question should not be why should this rationally probative evidence be admissible, but why shouldn't it be? To this basic principle of evidence the most important exception is of course the hearsay rule. But important as that rule is, it is itself an exception to the basic principle of the admissibility of all rational probative evidence. The objection to hearsay evidence is that its reliability cannot be tested by cross-examination. But it is obvious that the exclusion of all hearsay evidence will result in the exclusion of much reliable evidence. So the hearsay exception is itself riddled with exceptions for evidence which has some other assurance of reliability. One such exception is the admissibility of declarations against interest. The admissibility of the evidence here involved depends on the proper interplay of the three principles I have referred to — the general principle of admissibility of all rational probative evidence, the hearsay exception to the general principle, and the declaration against interest (including penal interest) exception to the hearsay exception. Jackson's taped declaration of March 30 has rational probative value (albeit somewhat cumulative of the March 22 tape); hence the basic principle calls for its admissibility. It is however hearsay; hence not admissible unless it falls within an exception to the hearsay rule. I think it falls at least within the declaration against penal interest exception and was properly admitted as such. The statement satisfied both the policy of the declaration against penal interest rule and its technical requirements. The basic reason for the rule permitting the admission of declarations against interest notwithstanding their hearsay character is that the fact that the declaration is against the speaker's interest furnishes a "circumstantial probability of trustworthiness * * * Probability of truthfulness is found in the belief that a person would not knowingly make a declaration contrary to his own pecuniary, proprietary or penal interest unless the declaration were true." (Richardson, Evidence [10th ed], § 256.) It is an assurance that the speaker is "in a truth-telling

frame of mind," (*People v Maerling,* 46 NY2d 289, 297); in a "trustworthy condition of mind," (5 Wigmore, Evidence [Chadbourn revision, 1974], § 1465). Wigmore thus states the general principle: "The basis of the exception is the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting". (*Id.,* § 1457.) But if probability of trustworthiness is the touchstone and the reason for the admission of declarations against interest notwithstanding their hearsay character, surely this declaration by Officer Jackson meets that standard. Why would any police officer say to anyone, friend or enemy, privately or publicly, that he had committed a shameful criminal act, violating not only the penal law but his sworn duty as an officer, if that statement were not true? (No "aberrant condition or motive" appears. [*People v Maerling,* 46 NY2d, at p 299, *supra.*]) The exclusion of this declaration would properly be subject to the criticism that the Court of Appeals made precisely in relation to an inculpatory use of a third person's statement in a criminal case. "[T]his court has in recent years emphasized that the hearsay doctrine has been too restrictively applied to exclude otherwise reliable evidence from the jury". (*People v Arnold,* 34 NY2d 548, 549.) Coming now to the technical prerequisites for use against a defendant in a criminal case of a declaration against penal interest made by another: There is, I think no dispute that this statement satisfies most of those technical requirements as stated in *People v Settles* (46 NY2d 154, 167). Jackson was unavailable to testify at the trial; appearing in response to a subpoena from the Special Prosecutor, he stated that he would invoke his privilege against self incrimination. Clearly, Jackson had competent knowledge of the facts underlying this statement. He was telling of a conversation that he himself had had with defendant. Supporting circumstances, independent of the statement itself, were present to attest to its trustworthiness and reliability. Reifenheiser, who had participated in and had been present at the misappropriation of the marihuana and its division among Jackson, defendant and Reifenheiser, testified to the underlying facts; and earlier tapes admissible under the coconspirator exception supported them. There is no evidence that because of "some other aberrant condition or motive, the declaration's 'hallmark of trustworthiness' was misleading". (*People v Maerling,* 46 NY2d, at p 299, *supra.*) The most troublesome question is whether the statement is inadmissible because the declarant, Jackson, thought he was speaking in confidence to a confederate and had no idea there was any risk that the statement would be used against him, and, in that sense, did not realize that it was against his penal interest. To exclude evidence on that ground would almost make the possibility of inculpatory use of declarations against penal interest a merely academic exercise without any real situation in which it could be applied. If told to a friend, the statement would not be admissible because the declarant would not expect that it would be used against him. If told to the police or to the prosecution, it would not be admissible because of declarant's motive to curry favor with the prosecutor. (Cf. *People v Geoghegan,* 51 NY2d 45.) Thus in the most probable situation in which a declaration against penal interest would be truthful — a declaration made in confidence to someone the declarant trusts — the declaration would be inadmissible. There has been scholarly discussion of whether the circumstantial probability of trustworthiness in declarations against interest arises from the fact that the statements can then be used against declarant or from the circumstance that the underlying facts in the declaration are unfavorable to declarant. (See Jefferson, Declarations Against Interest: An Exception to the Hearsay Rule, 58 Harv L Rev 1, 8.) Wigmore indeed accepts only the latter justification for the rule. (Wigmore, *op. cit.,* § 1462.) The Model Code of

Evidence of the American Law Institute takes the same position. Thus comment *c* of rule 509 states: *"c. Reasons for Rule.* The theory of the Rule, as of that of the common law rule, is not that the declarant is making evidence against himself. The Rule does not require that the making of the declaration be against the declarant's interest; it is the matter declared which must have that quality. The theory is that a declarant would not concede even to himself the existence of a matter contrary to his interest unless he believed it to be true. Hence, such a statement, found in a secret diary which the writer believed would never be seen by another, is quite as admissible in evidence as one made to a multitude." Our Court of Appeals has I think rejected any mechanical test in which admissibility would depend merely on whether the statement's use against declarant was anticipatable by him. Rather it has adopted a more flexible approach, in which admissibility of declarations against penal interest depends on an evaluation of probable reliability — "inherent trustworthiness" — an evaluation based on all the relevant circumstances. Among such circumstances the perception by the declarant that the statement may be used against him is a factor, but not determinative. Thus the Court of Appeals said in *People v Maerling* (46 NY2d, at p 297, *supra*): "The nature of the ultimate use to which a declaration against interest is put, especially when that use is anticipatable by the declarant, is *a factor* to be considered in deciding whether the declarant was in a truth-telling frame of mind, *but it need not be determinative."* (Italics mine.) The statement here involved clearly satisfies any overall evaluation of probable reliability. I have mentioned some of the indicia of reliability that buttress this statement, e.g., the unlikelihood that any police officer would make such a shameful declaration of criminal, dishonorable conduct to anyone, if it were untrue; the fact that the declarant was making the statement to a supposed coparticipant, whom declarant knew to have personal knowledge of the identity of the participants, so that there would be no point in falsely referring to one who was not a participant as a participant. One or two other matters have to be dealt with. The declaration is of course being used not against Jackson, the declarant, but against defendant Schmotzer. But the whole utility of declarations against interest is that they are usable against third persons; against the declarant they would clearly be admissible simply as admissions. The Court of Appeals has said that "ideally courts should only admit that portion of an inculpatory statement which is opposed to a declarant's interest." (*People v Maerling, supra,* at p 298.) But it is precisely this which was here offered; it was a report of a conversation that declarant had with defendant in which defendant asked declarant who had the drugs, and declarant told defendant that he had given everything to Reifenheiser and that Reifenheiser was going to divide it up. Thus the declaration against interest was precisely a declaration of a conversation with defendant about declarant's and defendant's joint criminal conduct. As the Court of Appeals noted with apparent approval in *People v Maerling* (*supra,* at p 297): "Congress specifically rejected a proposal to exclude from the ambit of Federal rule 804 (subd [b], par [3]) 'a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused' ". A word as to the bearing of the confrontation clause of the United States Constitution. "While the hearsay rule and the confrontation clause share a similarity of purpose, the protections they afford have not been viewed as entirely equatable." (*People v Salko,* 47 NY2d 230, 241.) At least as to the present case, it is clear there is no problem. The Supreme Court has held that the confrontation clause is not violated by a State rule of evidence that admits against one former conspirator a conversation between another conspirator and a third person had after the conspiracy as

such was over but during the "concealment" phase, i.e., while the conspirators had an interest in concealing their crime from the public authorities. (*Dutton v Evans*, 400 US 74.) That is precisely this case. A fair trial has resulted in a just verdict. Accordingly, this appellate court properly affirms.