■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ION JOSAN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Farlo, J.), rendered August 3, 1981, convicting him of criminal possession of stolen property in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. On December 19, 1979, a three-piece computer was stolen from the premises of Teleprompter Communications in Queens County. On April 4, 1980, Detective William McDevitt and his partner executed a warrant authorizing the search of the defendant's Queens apartment. There, they discovered a three-piece computer which, through a comparison of serial numbers, proved to be the one stolen from Teleprompter. The defendant was subsequently arrested and charged with possession of stolen property. At trial, over defense objection, McDevitt was permitted to testify as to a conversation he had with one Stan Catora at the prison on Rikers Island two days before the recovery of the computer. Catora, who at the time stood charged with grand larceny arising out of the theft of a car, admitted that he, Donald McGowan, and the defendant's stepson John McLoughlin, had stolen the computer and had sold it to the defendant a week later. McDevitt testified that Catora's unsolicited statement had been prompted by his desire for revenge against McGowan who had apparently implicated him in the car theft. According to the detective, inquiry revealed that Catora had subsequently moved to Florida where, prior to the time of trial, he had been arrested for robbery. Testifying in his own behalf, the defendant admitted that he had purchased the computer, but insisted that he did not know that it had been stolen. He claimed that he wanted to buy a computer to assist him in the management of the property he owned, and had discussed it with McLoughlin, the son of his estranged wife.

Subsequently, McLoughlin, who had college training in electronics, told the defendant that he was in the process of repairing a computer and that its owner would sell it for $1,500. Relying on McLoughlin's assurances as to the computer's condition, the defendant agreed to purchase it for that price. When he took possession of the computer, the defendant paid for it with three checks of $500 each. Two of the defendant's employees corroborated major portions of his testimony. In rebuttal, the People called Donald McGowan, who testified in return for a promise that he would not be prosecuted on two separate burglary charges. McGowan asserted that he, McLoughlin, and Catora had stolen the computer and had sold it to the defendant for $500. McGowan testified further that he had delivered stolen property to the defendant on previous occasions. After the close of evidence, and over strenuous defense objection, the court granted the prosecutor's request for a so-called missing witness charge. Accordingly, in the course of jury instructions, the court charged: "The defendant is under no obligation to call any witnesses in this case. The defendant did call witnesses. During the trial, there was reference made to John McLoughlin, the defendant's step-son, who was not called as a witness in this case. You must disregard the fact that a particular person was not called as a witness unless you are satisfied from the evidence in this case, one, that such person was under the control of the defendant and was in a position to give evidence contrary and not favoring and which would not support the defendant's position in this case. Two: That he has not shown a reasonable explanation for his failure to call such a person as a witness. If you are so satisfied, you may, in weighing the evidence in this case, but you are not required to, you may infer that the testimony of John McLoughlin would not support the defendant's version of the case. You may draw the strongest inference against the defendant that the opposing evidence permits." The jury, after asking for a rereading of the charge regarding "McLoughlin's absence", convicted the defendant as charged. We reverse. Under the circumstances at bar, it was error to give the jury a missing witness charge. There was no evidence that McLoughlin was available to the defendant, and indeed, it was alleged that the defendant had not seen or heard from McLoughlin since before his arrest. Nor is a relationship between a man and the emancipated son of his estranged wife sufficient in itself to give rise to a presumption that one is under the other's control for the purposes of the missing witness rule (cf. *People v Rodriguez,* 38 NY2d 95). Moreover, before a missing witness charge can be given, "the witness must be one who is, or may be inferred to be, of good will to the party" (Richardson, Evidence [Prince, 10th ed], § 92, p 66). In the case at bar, the defendant testified that he had innocently received the concededly stolen computer from McLoughlin. There was evidence at trial that McLoughlin had himself been involved in the theft of the computer. Thus, to be helpful to the defendant, McLoughlin would have had to testify in court that he had stolen, or at least, had possessed stolen property and that the defendant had bought it after McLoughlin had duped him into believing that the sale was legitimate. It would clearly be unreasonable to expect McLoughlin to so testify voluntarily, and thus he cannot be deemed to be a witness who would be "of good will" to the defendant (see *People v De Jesus,* 42 NY2d 519). In these circumstances, the missing witness charge was inappropriate and, since the jury specifically asked that the charge be repeated, it cannot be said with any degree of confidence that the erroneous charge did not contribute to the guilty verdict. In addition, it was error to permit Detective McDevitt to testify as to his conversation with Catora. Catora's statement was received for its truth as a declaration against penal interest. For a statement to qualify as such, it must be shown, *inter alia,* that, when the statement was made, the declarant was

aware that it was adverse to his penal interest (see *People v Settles,* 46 NY2d 154, 167; *People v Harding,* 37 NY2d 130, 135 [concurring opn of Cooke, J.]; Richardson, Evidence [Prince, 10th ed], § 257). Moreover, since the introduction of such a statement against a defendant in a criminal trial deprives him of the right to challenge it through cross-examination of the declarant, courts must act with circumspection and "should only admit that portion of an inculpatory statement which is opposed to a declarant's interest" (*People v Maerling,* 46 NY2d 289, 298). In the case at bar, when Catora made the statement, he was incarcerated and awaiting trial on a grand larceny charge. Although McDevitt testified that Catora had requested no consideration in return for the information he provided, the record indicates that, by the time of the trial herein, he had long since been released from custody in New York and, notwithstanding his full admission regarding the Teleprompter burglary, had never been arrested or charged with that crime. There is a serious doubt, therefore, as to whether Catora made the statement with the understanding that it was then in fact contrary to his penal interest, for there is "a distinct possibility" that he was motivated to inculpate the defendant in the hope of receiving favorable consideration on the charges pending against him (see *People v Settles,* 46 NY2d 154, 168, *supra*). Moreover, the only portion of Catora's statement that was against his penal interest was his admission that he had burglarized the Teleprompter premises and had stolen the computer. The identity of the person to whom he and his accomplices had allegedly sold the stolen property was not strictly against Catora's penal interest and, accordingly, that portion of his statement in which he identified the defendant as the buyer should have been ruled inadmissible (see *People v Geoghegan,* 51 NY2d 45, 49). Although we find no merit in the defendant's remaining contentions on this appeal, we conclude that the two errors discussed require reversal and a new trial. Mollen, P. J., Gulotta, Brown and Niehoff, JJ., concur.