· ■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE MILES, Appellant. — Judgment, Supreme Court, New York County (H. Altman, J.), rendered on June 3, 1981, and order of said court entered on June 21, 1982, affirmed. Asch and Milonas, JJ., concur in separate memoranda; Sullivan, J. P., concurs in the result only; and Carro and Bloom, JJ., dissent in separate memoranda, all as follows:

Asch, J. (concurring). I would affirm the judgment and order from which the appeal has been taken. I agree that this court has the power, upon review, to itself impose some legally authorized lesser sentence if it modifies or reverses the judgment as a matter of discretion in the interest of justice (CPL 470.20, subd 6). I do not believe *People v Farrar* (52 NY2d 302) restricts this appellate power. However, on careful consideration of the sentences of the appellant and of the others who participated with him in this tragic event I must agree with the conclusion of Justice Milonas. The crime itself was a heinous one. The participant Steven Sherman, who did little more than act as lookout, received a sentence of 15 years to life. While it is true that the principal actor Geoghegan received a sentence of 6⅙ to 18½ years as a result of his plea negotiations, the procedural problems resulting from the reversal of his initial conviction, plus the necessity for a retrial with its attendant vagaries, apparently served to enable his attorney to effect the sentence which he was afforded. These differences in sentences do not appear to be so disparate in view of the seriousness of the crime in which the appellant willingly and actively engaged, so as to warrant reduction of his sentence in the interest of justice.

Milonas, J. (concurring). Defendant George Miles was indicted on September 5, 1980 for two counts of murder in the second degree, one count of robbery in the first degree and one count of robbery in the second degree. On September 21, 1981, he pleaded guilty to one count of manslaughter in the first degree. Defendant admitted that on November 13, 1975, he, along with Steven Sherman, Henry Geoghegan and Thomas Gilligan, went to the apartment of Jan De Vroom, who was known to both Gilligan and Sherman, with the intention of perpetrating a robbery. Defendant carried a small knife and was aware that Geoghegan was armed with a 12-inch folding knife. As Gilligan and Sherman stood guard downstairs, defendant and Geoghegan entered De Vroom's apartment and then tied up their victim. When De Vroom resisted, Geoghegan, in defendant's presence, stabbed him 13 times in the neck, chest and throat. Gilligan and Sherman then joined the two men in the apartment, and the four of them ransacked the premises in a search for valuables. During this time, De Vroom was lying, bloodied, on the kitchen floor. Defendant did not know whether he was still alive. Subsequently, defendant and his accomplices split the proceeds of the robbery, defendant receiving between $150 and

$200 as his share. Following the crime, defendant fled to California, remaining there until August 19, 1980, when he was arrested on a warrant. He waived extradition and was returned to New York. During the period of defendant's lengthy sojourn in California, his confederates were arrested and prosecuted. Sherman was convicted, after trial, of murder in the second degree and robbery in the first degree, receiving a sentence of 15 years to life on the murder count and 12½ to 25 for the robbery. This court affirmed on May 24, 1979 (70 AD2d 790). Geoghegan was tried and convicted of two counts of murder in the second degree and one count of robbery in the first degree, for which he was sentenced to 25 years to life, as well as to lesser concurrent terms. However, on May 24, 1979, this court reversed and remanded for a new trial (68 AD2d 279) and the Court of Appeals affirmed (51 NY2d 45). He was later permitted to plead guilty to manslaughter in the first degree and was sentenced to 6⅙ to 18½ years. Gilligan, who testified against both Sherman and Geoghegan at their trials, pleaded guilty to attempted robbery in the second degree and received an indeterminate prison term of no more than three years. His conviction was affirmed by the Appellate Division on June 15, 1978 (63 AD2d 1124). Defendant's plea of guilty to manslaughter in the first degree was in full satisfaction of the charges against him. He expressed his understanding that the plea, which was the result of extended negotiations with the prosecution, was based upon an agreed sentence of 8⅓ to 25 years. When defendant appeared for sentencing on June 3, 1981, his lawyer relying upon the presentence report and other materials submitted on his client's behalf, requested that the court consider a lesser sentence. The court advised defendant that under *People v Farrar* (52 NY2d 302), the People were entitled to seek to vacate the plea if a lesser sentence were to be imposed. The prosecutor indicated that the People would indeed ask that the case be returned to its preplea status in the event of a lesser sentence, noting that the People were ready for trial. Defendant's attorney then described the facts which in his opinion warranted a reduced sentence — the defendant's age at the time of the murder (20 years), his "constructive" activities while in California, the imbalance between the defendant's promised sentence and that of Geoghegan (in both instances 8⅓ to 25 years), the death of defendant's sister, his father's poor health and the concern of defendant's family. Defense counsel asserted, however, that he did not wish the court to deviate from the original sentence if that would cause the District Attorney to insist on his right to restore the murder charges. The court then proceeded to impose a sentence of 8⅓ to 25 years, commenting that it was a "provident one" and that it would have adhered to the promise in any event. On May 21, 1982, defendant moved pursuant to CPL 440.20 to set aside his sentence on the ground that it was founded on the mistaken belief that Geoghegan had received the same sentence when, in reality, and despite greater culpability, he had only been sentenced to 6⅙ to 18½ years and, in addition, that law enforcement authorities had failed to inform the court of defendant's assistance to the Department of Correction. In that regard, defendant referred to a letter written by Inspector General Eng of the Department of Correction stating that the defendant's "cooperation would be made known to any legitimate authority desiring this information for whatever help it might provide." Nonetheless, Eng observed that no commitment had been made to defendant with respect to the De Vroom murder. In response, the People stated that although defendant had volunteered to co-operate, he had not performed any service of value nor provided any information previously unknown to the Department of Correction. On June 21, 1982, the court denied defendant's motion to vacate, finding meritless his allegation concerning the mistake of fact. According to the court, defendant was aware that Geoghegan had not yet

been sentenced and could have been given a maximum of 8⅓ to 25 years under his plea. Defendant's sentence was, thus, not rendered "unauthorized, illegally imposed or otherwise invalid as a matter of law" (CPL 440.20, subd 1) simply because Geoghegan had actually received a lesser sentence. The court also rejected defendant's claim regarding the supposed nondisclosure of his cooperation with the Department of Correction and reaffirmed its prior decision that sentence imposed upon him was appropriate. Although defendant has apparently made an attempt at rehabilitation and has also manifested some remorse for his involvement in the crime, that cannot obscure the fact that the murder and robbery at issue here was a brutal, heinous crime which defendant helped to plan and execute. Prior to its commission, he armed himself with a knife; he also had knowledge of the 12-inch "buck knife" being carried by Geoghegan. He watched Geoghegan repeatedly stab the tied-up De Vroom, making no effort either to come to the victim's assistance or to stop Geoghegan. When De Vroom lay bleeding in the kitchen, he and his cohorts ransacked the apartment. If convicted of the original charges in the indictment, the defendant could have been sentenced to 25 years to life, but largely because of the mitigating factors to which he now points, he was permitted to plead guilty to the lesser offense of manslaughter in the first degree. Under these circumstances, and in view of the seriousness of the crime, he has already been accorded sufficient leniency. Certainly, the sentence imposed by the court can hardly be deemed to constitute an abuse of discretion. Absent such an abuse, the sentence should be affirmed. (*People v Junco,* 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951.) Defendant's associate, Steven Sherman, who remained downstairs during the murder and is thus, if anything, less culpable than defendant, is currently serving a 15 year to life sentence. The actual killer, Geoghegan, initially sentenced to 25 years to life, was fortunate in having his conviction overturned and eventually ended up with a plea-bargained sentence remarkably moderate considering the nature of the offense. The fact that Geoghegan may have been presented with an overly lenient sentence does not justify compounding the error with another inappropriate sentence. Moreover, even if reduction of defendant's sentence were warranted, the ruling by the Court of Appeals in *People v Farrar* (52 NY2d 302, *supra*), which, in my opinion, is applicable to an appellate court, mandates that the prosecution be accorded an opportunity to withdraw its consent to the defendant's plea. In *Farrar* (p 307), the court expressly acknowledges "the prosecutor's right to withdraw consent to the plea in the event that the sentence to be imposed is less than originally negotiated by the parties." According to the court (pp 307-308): "The legislative policy of this State is to require the consent of the court and prosecutor to a plea to a lesser included offense or to less than the entire indictment * * * Such a joint consent procedure prevents abuse * * * and recognizes the prosecutor's independent role and interest concerning the course the prosecution will take. Where the record shows that the prosecutor's consent to a plea is premised on a negotiated sentence and a lesser sentence is later deemed more appropriate, the People should be given the opportunity to withdraw their consent." (See, also, *People v Thompson,* 91 AD2d 672; *People v Biagini,* 87 AD2d 634.) Consequently, the judgment of the Supreme Court, New York County (H. Altman, J.), rendered on June 3, 1981, convicting defendant of manslaughter in the first degree and sentencing him to 8⅓ to 25 years, should be affirmed.

Carro, J. (dissenting). George Miles, with the intent to forcibly rob, was present and stood by as his codefendant fatally stabbed the victim 13 times. On June 3, 1981, when appellant was sentenced, the codefendant had not yet been sentenced, but the court was under the mistaken impression that the codefendant had received an 8⅓ to 25 year term. Proceeding on the information before

it, the court imposed the same sentence on appellant, pursuant to a plea bargain. The subsequent CPL 440.20 motion, however, brought material facts to the court's attention which both corrected erroneous statements by the prosecutor and added new facts for the court's consideration. The court denied the motion, stating that it "was aware at the time of sentence that Mr. Geoghegan had not yet been sentenced". The sentencing minutes belie this assertion. Rather, the court asked what the offer made to Geoghegan had been and the prosecutor told him that it was the same — 8⅓ to 25 on a manslaughter plea. In fact, Geoghegan had been given an "open" plea, subsequently receiving a sentence of 6 years, 2 months to 18½ years. In these circumstances, it is clear that the court below did not, in its unfettered exercise of discretion, fully consider all of the facts presented to it. Beyond that, and which is more to the point, the gross discrepancy in sentences as between defendant and Geoghegan is offensive to traditional notions of fairness and substance justice. To be sure, there are a myriad of sentences pronounced each year which, if compared one to the other, would indicate unequal punishment for the same or greater crimes. In a system where the discretion to determine sentence is left to the court, after a full appraisal of *all* the relevant factors (cf. *People v Selikoff,* 35 NY2d 227, 238), such a result is to be expected. But where the court is presented with one case in which two defendants are prosecuted for the same act, but one defendant is, by leagues, the more vicious of the two, it makes no sense and it ultimately damages the credibility of the court to allow the less culpable defendant to be sentenced to a third more time. Especially is this true here, where this defendant shows remorse and evidences a determination to rehabilitate himself, starkly contrasting Geoghegan's long criminal record. (Compare *People v Notey,* 72 AD2d 279, 283.) Accordingly, I would modify the judgment to the extent of vacating the sentence and resentence the defendant. It has been argued that in light of *People v Farrar* (52 NY2d 302), we do not have the power ourselves to resentence. The Second Department has recently adopted this position in *People v Thompson* (91 AD2d 672, vacating 88 AD2d 939). But CPL 470.20 (subd 6) states: "Upon modifying a judgment or reversing a sentence as a matter of discretion in the interest of justice upon the ground that the sentence is unduly harsh or severe, *the court must itself impose some legally authorized lesser sentence."* (Emphasis added.) To me the above makes it clear that we have a duty which would not be satisfied by remanding to the court below. (Compare CPL 470.20, subd 4.) *People v Farrar (supra)* spoke only of the trial court's role in sentencing on a plea bargain, and made no mention or reference to our powers upon review. Even assuming (without conceding) that *Farrar* extends to the trial court's consideration of a 440.20 motion, I see no reason to further extend that decision and allow it to hamper the appellate process. Instead I would merely affirm the underlying conviction, grant the motion for resentence and sentence defendant to a 6 to 18 year term.

Bloom, J. (dissenting). I am in agreement with my brother Milonas that the crime in question was a heinous one. Were that the only question to be considered, I could, without difficulty, subscribe to his conclusion that the judgment, as rendered, ought stand. However, it is not the single problem with which we are confronted. Geoghegan, the most culpable of all the actors in this sordid tragedy ended up with a sentence of 6 years, 2 months to 18 years, 6 months after trial, appellate reversal and plea. Making due allowance for the vagaries in the sentencing process there is an element of unfairness in imposing a greater sentence of 8 years, 4 months to 25 years upon a lesser actor in the crime. For that reason I would hold that, at minimum, the sentences ought be equalized. However, I am of the opinion that *People v Farrar* (52 NY2d 302) is as binding upon us as it is upon the trial court. That case requires

that where the prosecution and the defense agree upon a sentence as a condition of a plea to a crime lesser in degree to that charged in the indictment, and the court is informed of the agreement and consents thereto, the court may not thereafter impose a sentence less than the agreed sentence without first affording the prosecutor the opportunity to withdraw his consent to the plea. Moreover, I do not think that CPL 470.15 (subd 2, par [c]) and 470.20 (subd 6), both of which confer upon us the power to modify a sentence which is "unduly harsh or severe" and to impose "some legally authorized lesser sentence" extend our power to ignore, in favor of a defendant, a treaty as to sentence reached between the parties without compliance with *Farrar*. Upon the argument defendant suggested that if the sentence were set aside and the case remanded for resentence he would, if the prosecutor refused to offer a lesser sentence, be ready to withdraw his plea and go to trial. While the prosecutor was unable to inform us whether the witnesses were available if the matter were now set down for trial, he did indicate, by letter sent in response to our request, that such a course would present his office with formidable difficulties because of the span of almost eight years intervening since the murder. Given these circumstances, I would afford the District Attorney the option of determining whether or not he would consent to a reduction of the sentence. In the event that the District Attorney so consents, defendant shall be resentenced accordingly. In the event he fails to do so, the defendant's plea shall be vacated and he shall be permitted to plead anew (*People v Thompson*, 91 AD2d 672). Thus, in accordance with the teaching of *Farrar* and *Thompson*, I would reverse and remand for resentence unless the office of the District Attorney, New York County, consents in writing to a reduction of the sentence to 6 years, 2 months to 18 years, 6 months. In the event it so consents, I would modify accordingly, and as modified, affirm. In the event it fails to do so, I would vacate defendant's plea and grant leave to him to plead anew.