THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL TRICE, Appellant.

Fourth Department, May 25, 1984

APPEARANCES OF COUNSEL

*John J. Brunetti* for appellant.

*Richard Hennessy, District Attorney* (*John Cirando* of counsel), for respondent.

OPINION OF THE COURT

DENMAN, J.

The body of 16-year-old Arlene Tarkowski was discovered at approximately 6:45 A.M. on Monday, March 30, 1981 propped against the wheel of a truck in a parking lot in the City of Syracuse. Her face was bludgeoned beyond recognition, her face and skull were covered with lacerations, her jaw and skull were fractured and her body was covered with burns and bruises. Defendant was convicted, following a jury trial, of second degree murder. The theory of the People's case was that defendant kidnapped, tortured and killed the victim in an attempt to force her to work for him as a prostitute. Of the several grounds of error asserted by defendant, the following compel reversal of the judgment of conviction and the granting of a new trial.

### THE "DECLARATION AGAINST PENAL INTEREST"
### EXCEPTION TO THE HEARSAY RULE

The People sought to prove that defendant kidnapped Tarkowski and held her captive from approximately Sunday, March 22 to Thursday, March 26, or Friday, March 27 in a house at 106 Lincoln Avenue in Syracuse in which he lived with Patricia Sanford and her two children. The scenario that unfolded made clear that Tarkowski was tortured during that period and taken out to work as a prostitute by Trice and/or Scott Dillenbeck, a coconspirator who had been tried previously and convicted of Tarkowski's murder. Invoking their Fifth Amendment rights, both Dillenbeck and Patricia Sanford refused to testify at defendant's trial. The People were then allowed to introduce into evidence statements, designated "Voluntary Confessional Affidavits", which Dillenbeck and Sanford had given to the police. The basis for the admission of those hearsay statements was that they were statements against the declarants' penal interest.

"To qualify for admission into evidence as a declaration against the maker's penal interest the following elements must be present: first, the declarant must be unavailable as a witness at trial; second, when the statement was made the declarant must be aware [*sic*] that it was adverse to his penal interest; third, the declarant must have competent knowledge of the facts underlying the statement; and, fourth, and most important, supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability" (*People v Settles,* 46 NY2d 154, 167). Because both Sanford and Dillenbeck refused to testify at trial, they were "unavailable" within the meaning of the rule. Further, both declarants had competent knowledge of the facts underlying their statements, since both were admittedly living in the premises on Lincoln Avenue during the period in question. The statements, however, do not meet the second and fourth requirements.

### THE DILLENBECK STATEMENT

Dillenbeck made a 12-page statement to the police which was redacted and read into evidence by a member of the Syracuse Police Department. The only crimes which he

admitted in that redacted statement were that he smoked marihuana on five occasions. When examining a statement to determine if it qualifies as an exception, we must scrutinize it closely, for not every disserving statement is admissible. "[T]he interest which the declaration compromises must be one of sufficient magnitude or consequence to the declarant to all but rule out any motive to falsify" (*People v Maerling*, 46 NY2d 289, 298). Dillenbeck was being questioned in connection with Tarkowski's murder. Considering the magnitude of the murder charge, the admission of smoking marihuana is so insignificant as to render the statement "too tenuous and too trivial to guarantee [its] trustworthiness" (*People v Maerling, supra*, p 300).

### THE SANFORD STATEMENT

The statement of Patricia Sanford differs from that of Dillenbeck because it does contain admissions which could subject her to significant criminal liability. She admitted, for example, that Arlene was going to "make some money for us" and that, at defendant's direction, she left her job and went home to prevent Arlene from leaving their house. That portion of her statement was, at least arguably, admissible; however, the balance of the statement made many allegations about Dillenbeck, suggesting that it was he who had tortured Arlene and that he was responsible for her death. She, of course, had every motive to lie and implicate Dillenbeck so as to shift the focus away from defendant, who was her lover. The fact that her statement was not restricted to self-inculpation but implicated Dillenbeck as well renders it inadmissible (see *People v Geoghegan*, 51 NY2d 45, 49; *People v Maerling*, 46 NY2d 289, 298, *supra; People v Josan*, 92 AD2d 902, 904).

Additionally, it is necessary to examine the circumstances under which both of these statements were made, for a statement which is ostensibly disserving may, in fact, be self-serving. This is particularly true in the instance of custodial statements such as those here. "The question is whether the declarant was motivated by 'the very natural desire to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, ... [or] the desire for revenge ... [and thus] might well have been motivated to misrepresent the role of others in the criminal

enterprise, and might well have viewed the statement as a whole — including the ostensibly disserving portions — to be *in* his [or her] interest rather than against it.' *United States v. Sarmiento-Perez, supra,* 633 F2d at 1102 (emphasis in original); see also *United States v. Love, supra,* 592 F2d at 1025-26; *United States v. Lilley, supra,* 581 F2d at 184-88" (*United States v Riley,* 657 F2d 1377, 1384, cert den 459 US 1111). Analyzed in the light of that caveat, the statements of both Dillenbeck and Sanford reveal more that is self-serving than is inculpatory and, in view of the custodial circumstances in which they were made, offer no guarantee against fabrication. The indicia of trustworthiness and reliability which are contemplated by the rule set forth in *People v Geoghegan* (51 NY2d 45, *supra*) and *People v Maerling* (46 NY2d 289, *supra*) being absent from the present case, it was error to admit these statements.

### DEFENDANT'S REQUEST TO SECURE THE ATTENDANCE OF AN OUT-OF-STATE MATERIAL WITNESS

Pursuant to the "Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases" (CPL 640.10, subd 3), defendant requested the court to declare that Mohamad Sweilem was a material witness and to request the Ohio court to issue a subpoena requiring his attendance at trial. The court refused that request and defendant contends that he was denied his constitutional right to compulsory process to secure the attendance of a material witness or, alternatively, that it was an abuse of discretion for the court to refuse that request. Defendant's constitutional argument must fail because the Sixth Amendment guarantee of compulsory process does not extend to a witness without the State's subpoena powers (see *People v McCartney,* 38 NY2d 618, 621). We find, however, that it was an abuse of discretion for the court to deny defendant's request.

"The party who seeks to secure the presence of an out-of-State witness should present evidence in the form of an affidavit of the witness or otherwise show that the testimony of the desired witness is material and necessary" (*People v McCartney, supra,* p 622). Defendant met that

requirement. He submitted the affidavit of Mohamad Sweilem, an apparently disinterested witness, which had been given to the police on the day Arlene's body was discovered. Sweilem stated that he worked at a supermarket on Merriman Avenue and that he had seen a girl whom he identified as Arlene Tarkowski on Sunday afternoon, March 29, at approximately 3:00 P.M., with a young man whom he identified as Billy Blake, Arlene's sometime boyfriend. He stated that the girl whom he saw had a cross tatooed on her left hand. A picture of decedent later admitted into evidence showed that she had a cross tatooed on her left hand. Defense counsel submitted an affidavit in which he averred that Sweilem's testimony was critical in view of the fact that the indictment charged defendant with murdering the victim on March 26 or March 27, two to three days before the time Sweilem stated that he had seen the victim alive. Defendant's application, which was made two weeks before trial, was denied. After two defense witnesses, Hill and Montreal, testified that they had seen the victim on Friday night, the 27th, on Merriman Avenue, the court re-examined its ruling but decided that Sweilem's statement was not credible in the light of the medical evidence and refused to grant defendant's request.

We find that Sweilem's testimony was material and relevant and that its credibility was a question for the jury. The time of death was a critical issue. The People's expert testified that death had occurred at least 24 hours before the autopsy at 9:00 A.M. on March 30 and, depending on the temperature to which the body had been subjected, perhaps as long as three to four days. The defendant's medical expert opined that death occurred at least 24 and perhaps 36 hours before the autopsy. The police chemist stated that the contents of the victim's stomach indicated that she had eaten spaghetti approximately six hours before her death. There was proof that Sanford had cooked a spaghetti dinner which Arlene had eaten on Thursday evening, the 26th. Another witness testified that he had seen the victim with Trice and Dillenbeck around 8:00 P.M. on Thursday, the 26th. Trice, Dillenbeck and Sanford went to Buffalo on Friday night and did not return to Syracuse until 4 o'clock Sunday afternoon. The conclusion is thus inescapable that

Sweilem's testimony was material and relevant to establishing the time of death. It was thus an abuse of discretion for the court to deny defendant's request merely because it found that such testimony was not credible.

### SUMMARY DENIAL OF DEFENDANT'S SUPPRESSION MOTION WAS IMPROPER

It was error for the court not to hold a hearing on the factual issues raised by defendant's motion to suppress the physical evidence seized from his home on March 31 and April 17, 1981. The People contend that a hearing was not required because defendant's moving papers did not contain sworn allegations of fact supporting the grounds on which the motion was based (CPL 710.60, subd 3, par [a]; *People v Allweiss,* 48 NY2d 40). Such contention is without merit. The moving papers contain a personal affirmation from defense counsel in which he states that he examined the search warrant, the supporting affidavits and the property seized and that he interviewed the defendant, Patricia Sanford and the District Attorney involved. Based on his investigation, counsel alleged that a signed consent to search, upon which the March 31, 1981 search was based, was obtained from Patricia Sanford during the course of a five-hour interrogation and hence was involuntary. As a consequence, counsel argued that the affidavits in support of the search warrant were invalid because they were based upon the March 31 search, so that the items seized in the later search should be suppressed as "fruit of the poisonous tree". The moving papers also asserted that certain items seized in the April 17 search were not authorized under the search warrant. These allegations were not controverted as the People did not submit an answering affidavit and the court did not rule on the motion.

The issues raised in defendant's moving papers clearly entitled him to an evidentiary hearing and it was error for the court to deny the motion summarily, particularly in view of the fact that no opposing papers were submitted by the District Attorney (CPL 710.60, subd 4; *People v Jenkins,* 73 AD2d 694; *People v Carrion,* 68 AD2d 827; *People v Werner,* 55 AD2d 317). On the retrial of this matter, therefore, defendant should be afforded an evidentiary hearing on his motion.

Accordingly, the judgment should be reversed and a new trial granted.

CALLAHAN, J. P., BOOMER, O'DONNELL and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law and facts, and a new trial granted.