OPINION OF THE COURT
Jasen, J.
The issue presented on this appeal is whether certain letters and conversations sought to be introduced at trial by defendant constituted declarations against penal interest which should have been admitted into evidence as exceptions to the rule against hearsay. Defendant was convicted of manslaughter in the first degree in Oneida County Court after a jury trial in which letters and conversations of his father inculpating himself and tending to exculpate defendant were refused admittance into evidence. The Appellate Division, Fourth Department, reversed the judgment below and granted a new trial on the ground that the father’s declarations against penal interest should not have been excluded. The People were granted leave to appeal by a judge of this court. We now reverse and reinstate the conviction.
On September 13, 1981, the badly decomposed remains of a human body were found in a wooded and sparsely populated area in the City of Rome. A skull was discovered in one location while the remainder of the body was found in the gully below. Two days thereafter, defendant called the police and said that he wished to speak about his activities with the decedent who, by that time, had been identified. When defendant arrived at police headquarters, he was advised of his constitutional rights, indicated his understanding, waived his rights and chose to speak. After initially telling the investigator that he had purchased a motorcycle from the decedent on August 7,1981, he explained in gruesome detail what had subsequently occurred.
Defendant said that he and the decedent drove the motorcycle to the area in which decedent’s remains were found. After drinking some beer and smoking marihuana, the decedent made *311 a homosexual advance toward defendant. When decedent persisted despite defendant’s rejection, defendant began striking and kicking him repeatedly in the head, the face and the stomach until decedent was unconscious. Defendant moved decedent into a recess in the ground. When defendant noticed that his own shirt was covered with blood, he removed it and hid it with decedent’s body. He then drove away.
According to defendant, he returned four or five days later and attempted to create the appearance of an accident. He said that he stabbed the decedent in the back with a stick which he then removed, and that he took a wallet and other small items from decedent’s person, which he later discarded. Defendant said that he left the scene but returned again another four or five days thereafter. At that time, he removed the decedent’s corpse from the recess in order better to conceal it elsewhere. While dragging the corpse by the shoes, the skull separated from the remainder of decedent’s body. Defendant buried the skull in a hole he had dug, and covered the body in a gully below with sticks, branches and pine needles. These admissions were consistent with police findings at the scene where decedent’s body was discovered.
Defendant was indicted on two counts of murder in the second degree. At trial, defendant sought to introduce certain letters and conversations in which his father claimed responsibility for decedent’s death. In four letters, dated May 1 through May 3, 1982, nine months subsequent to decedent’s death, the father stated that he had learned in January, from defendant’s attorney, that a knife may have been used to kill decedent, that he later came to believe that he might earlier have assaulted someone at his trailer with a knife, and that the individual must have been decedent. Defendant’s father related in the letters that he did not want his son to be imprisoned for life for what he himself had done and, moreover, that he would take care of himself to insure that he did not spend his own life in prison either. Defendant’s father was found dead, a few days later, having apparently committed suicide.
County Court refused to admit either the letters or the testimony of defense witnesses about conversations they had with defendant’s father. The court summarized the requirements for declarations against penal interest, noted that the father’s statements did not conform to other testimony adduced at trial and that the father’s recollection of his involvement was rather belated, and held that the absence of independent supporting circumstances precluded admission of the father’s declarations.
*312 On appeal to the Appellate Division following the jury verdict and judgment of conviction of manslaughter in the first degree, that court held that it was error to exclude the father’s out-of-court declarations. The Appellate Division reasoned that the father’s statement that he had used a knife, being “consistent with the medical evidence [and] inconsistent with defendant’s statement” (105 AD2d, at p 1129), supplied the requisite showing of trustworthiness and reliability necessary for admission into evidence under this court’s decision in People v Settles (46 NY2d 154, 167). We disagree.
This court first held in People v Brown (26 NY2d 88, 94) that a declaration against penal interest, without any concomitant risk of pecuniary or proprietary loss, is admissible into evidence as an exception to the rule against hearsay. Since that time, we have enumerated several criteria which must be demonstrated by the party offering the declaration before it may be introduced. Though somewhat variously expressed, four basic prerequisites have been repeatedly identified: (1) the declarant is unavailable to give testimony by reason of absence from the jurisdiction, refusal to testify on constitutional grounds, or death; (2) the declarant was aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant had such knowledge of the facts recited in his declaration as would be required to permit him to testify to them; and (4) there exist sufficient indicia of the declaration’s trustworthiness to insure its reliability. (See, e.g., People v Settles, supra, at p 167; People v Geoghegan, 51 NY2d 45, 50 [Jasen, J., dissenting]; People v Maerling, 46 NY2d 289, 295-296; People v Harding, 37 NY2d 130, 135 [Cooke, J., concurring]; Richardson, Evidence §§ 255-263 [Prince 10th ed].) While the declarations in this case surely satisfy the first criterion, we need only address the fourth which is dispositive of this appeal.
Of that prerequisite, this court has noted that “[t]he crucial inquiry focuses on the intrinsic trustworthiness of the statement as confirmed by competent evidence independent of the declaration itself.” (People v Settles, supra, at p 169.) While the admissibility of declarations against penal interest is predicated upon the theory that their reliability can generally be presumed because a person does not ordinarily reveal facts which jeopardize his interests (see, Richardson, Evidence § 256 [Prince 10th ed]; People v Maerling, supra, at p 295; People v Settles, supra, at p 168), nevertheless, that generalization must be tempered with a recognition of the limitations upon its validity under particular circumstances. Indeed, certain considerations may be fatal to *313 the reliability of a declaration and thereby render the out-of-court statement inadmissible.
These considerations include the declarant’s motivation — e.g., whether the statement was designed to exculpate a loved one or inculpate an enemy. Important also is the declarant’s personality — e.g., whether he suffers psychological or emotional instability or whether he is a chronic or pathological liar. Additionally, the declarant’s spontaneity or hesitancy, promptness or tardiness in making the statement may shed light on its authenticity. Likewise, the internal consistency and coherence of the declaration, or its lack thereof, may reflect on its bona fides. Most critical in some cases, is the availability of supporting evidence — that is, some proof, independent of the declaration itself, which tends to confirm the truth of the facts asserted therein. Regardless of how self-incriminatory a particular declaration against penal interest might be, all or any of the foregoing may affect its reliability. (See, People v Geoghegan, supra, at pp 49-50; People v Maerling, supra, at pp 299-301; People v Settles, supra, at pp 168-169; cf. Chambers v Mississippi, 410 US 284, 299-301.)
While these and other relevant considerations should all be weighed, whenever applicable, by the trial court in the exercise of its sound discretion, the presence of a strong motivation to fabricate or the absence of supporting evidence can, without more, be sufficient to render a declaration inadmissible as a matter of law. (People v Geoghegan, supra, at p 50; People v Settles, supra, at pp 168-169; cf. Cover v Cohen, 61 NY2d 261, 274.) Here, the declaration in question suffers from both fatal defects.
If anything is clear from the letters sought to be introduced into evidence, it is that defendant’s father was distressed that his son might spend a lifetime in prison and that he wished to do what he could to prevent that from happening. That this motivation was particularly strong is obvious, not solely from the father-son relationship involved, but also from the content of the letters themselves. The father ostensibly struggled, but ultimately failed, to recall the actual nature of his involvement, if any at all, with decedent. Indeed, the letters evince the father’s considerable difficulty in providing some possible explanation for decedent’s death. The only thing that emerges clearly from the ambiguity and uncertainty of the letters is that the father was intent upon exculpating his son.
There is more, here, than the “distinct possibility”, as we referred to it in Settles (supra, at p 168), that the declarant had a *314 motive to prevaricate. Indeed, it is apparent that, even without an intelligible understanding of his own role and that of his son in decedent’s death, the father had a strong ulterior'motive, to exculpate his son entirely. Such an incentive, even where independent supporting evidence was adduced, has been deemed by this court, without more, to be a bar to the admission of a declaration against penal interest. (See, People v Geoghegan, supra.)
In this case, the grounds for precluding admission are even stronger as there is no competent supporting evidence. Contrary to the holding of the Appellate Division and the contention of defendant, the testimony of the medical examiner that decedent was probably stabbed with a knife does not provide the requisite independent confirmation. Rather, as stated in one of the letters itself, the father had learned from his son’s attorney that a knife was likely used. The father stated that he had been told in mid-January 1982, which was four months after decedent’s remains were discovered and subsequent to medical examination of the remains and release of the report. Moreover, the letter itself, dated May 1, 1982, was apparently not written until several months after that, at which time, presumably, the medical findings were known to defendant’s family. It can hardly be said with any measure of confidence that the father’s statement and the medical evidence concerning the use of a knife were independent of each other.
This conclusion is mandated, a fortiori, by other statements in the father’s same letter of May 1,1982. The father stated that at first he “thought that if [decedent] was beat to death maybe I used the snow shovel that they picked up with the search.” It was only after “time passed” and he was told “a knife might have been used”, that “this put me to thinking again”. He added that at the time of his alleged involvement in the incident, he had been “tired from lack of sleep. Also I had drank beer that night. I don’t think very much but in my physical and mental condition and the stories [a friend] had told, anything could have happened”. Such remarks vitiate whatever corroborative value might have otherwise been derived from the probable use of a knife and, moreover, preclude any attribution of trustworthiness to the father’s declarations. Defendant’s failure to mention a knife in his statements can in no way save the father’s declarations from these internal defects.
Finally, while the foregoing is sufficient to render the declarations inadmissible as a matter of law, it ought also to be noted that other factors cast serious doubts upon their reliability. The *315 father’s statements were rather late in the making and, then, only upon a suspect recollection instigated by and predicated upon information supplied by another. Additionally, the father’s mental and emotional stability were rather dubious, not the least by reason of his own admission, his apparent inability to recollect serious events coherently, and his committing suicide within days of his writing the letters. Indeed, under the facts of this case, the father’s suicide provides no indicia of reliability. When all these factors are considered — i.e., the incentive to falsify, the absence of independent supporting evidence, the tardiness and lack of spontaneity, and the evidence of instability — there can be no doubt that admission of the father’s letters, and other conversations, as declarations against penal interest would have constituted an abuse of discretion on the part of the trial court. (See, People v Maerling, supra, at pp 300-301.)
Accordingly, the order of the Appellate Division should be reversed, the conviction reinstated, and the case remitted to the Appellate Division for further consideration of the facts and of other issues, if any, not previously reached by that court.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye and Alexander concur; Judge Titone taking no part.
Order reversed, conviction reinstated and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the opinion herein.