■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v COREY YOUNG, Also Known as NOTTY HOE and NAHEEM, Appellant. [746 NYS2d 195] —Carpinello, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered September 22, 1998, upon a verdict convicting defendant of the crimes of attempted murder in the first degree (two counts), attempted aggravated assault upon a police or peace officer (two counts), criminal possession of a weapon in the

second degree (two counts), reckless endangerment in the first degree (two counts) and robbery in the second degree.

In February 1995, two City of Albany police officers who responded to the report of a robbery were shot at by a fleeing suspect, who avoided capture. Neither of the robbery victims could identify their two assailants and the officers were unable to identify the shooter. Two years later, the investigation revealed information which led to defendant's arrest in North Carolina. He was charged in a nine-count indictment with a number of crimes arising out of the February 1995 incident, including two counts each of attempted murder in the first degree and reckless endangerment in the first degree and a single count of robbery in the second degree. Michael Cancer was named as a codefendant in the robbery count. Defendant was tried separately and found guilty on all counts. He was sentenced to an aggregate total of 57½ years to life in prison, which included consecutive terms of 25 years to life on the attempted murder counts and a consecutive sentence of 7½ to 15 years on the robbery count. He now appeals.

Relying on *People v Pelchat* (62 NY2d 97), defendant first claims that the People were obligated to obtain a superceding indictment upon learning that DNA testing excluded defendant as the source of some blood found in the vicinity of the shooting. Defendant argues that these test results disproved the prosecution's theory as presented to the grand jury that defendant left a trail of blood after the shooting. In contrast to *Pelchat*, however, defendant was convicted after trial, not as the result of a guilty plea. He therefore is precluded from raising this claim directed at the proof before the grand jury (*see, People v Bryant*, 234 AD2d 605, *lv denied* 89 NY2d 1032; *People v Bey*, 179 AD2d 905, *lvs denied* 79 NY2d 918, 1046).

With regard to defendant's claim that the verdict finding him guilty of both attempted murder and reckless endangerment is inconsistent, we note that he failed to preserve the issue for our review by appropriate objection before the jury was discharged, at a time when the alleged error could have been corrected (*see, People v Alfaro*, 66 NY2d 985; *People v Robinson*, 258 AD2d 817, *lv denied* 93 NY2d 978). In addition, if defendant is correct, the error occurred when County Court submitted the crimes to the jury without directing that they be considered in the alternative (*see, People v Gallagher*, 69 NY2d 525, 530). However, defendant neither requested submission in the alternative nor objected to the charge as given. Having concluded that the claim was not preserved as an issue of law by appropriate objection, we also decline to exercise our

discretionary authority to take remedial action in the interest of justice (*see, People v Hildreth*, 279 AD2d 791, 793-794, *lv denied* 96 NY2d 940).

Defendant further claims that the admission over his objection of two hearsay statements by his robbery accomplice, Cancer, denied his constitutional right under the Confrontation Clause (*see*, US Const 6th Amend; NY Const, art I, § 6) to cross-examine an adverse witness. The first of the statements occurred shortly before the robbery when Cancer and defendant appeared at the house of a friend, Eugene Morrow, and asked to borrow a hooded sweatshirt. Morrow gave them the sweatshirt and asked the two of them what they were "getting into." Cancer replied that "they was going to get somebody." The second of the challenged statements occurred several days after the incident when another friend, Abdullah McKnight, had a conversation with Cancer regarding defendant. During that conversation, Cancer said that "we robbed some guys for the[ir] coats." Morrow and McKnight were permitted to testify at trial about Cancer's statements.

Defendant's claim that the admission of the statements violated his rights under the Confrontation Clause is different than a claim that the statements were inadmissible under common-law hearsay rules (*see, People v Kello*, 96 NY2d 740, 743). Thus, "[t]he Supreme Court has developed a two-part test 'for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause'" (*People v James*, 93 NY2d 620, 641, quoting *Idaho v Wright*, 497 US 805, 814). Inasmuch as defendant's objections at trial and here on appeal are based solely on the Confrontation Clause, he waived any claim that the statements were inadmissible under common-law hearsay rules.

Pursuant to the two-part test established for Confrontation Clause purposes, the hearsay declarant must be unavailable to testify and the statement must bear sufficient indicia of reliability (*see, People v Sanders*, 56 NY2d 51, 64). In this case, Cancer's unavailability is undisputed and, therefore, our focus is on the reliability of the statements. "The indicia of reliability requirement can 'be met in either of two circumstances: where the hearsay statement "falls within a firmly rooted hearsay exception," or where it is supported by "a showing of particularized guarantees of trustworthiness"'" (*People v James, supra* at 641, quoting *Idaho v Wright, supra* at 816, quoting *Ohio v Roberts*, 448 US 56, 66). In this case, we need not decide whether the statements fall within a hearsay exception that

has been recognized as "firmly rooted," for they satisfy the second condition.

The relevant factors to be considered in determining whether a statement is supported by particularized guarantees of trustworthiness include spontaneity, repetition, the mental state of the declarant, absence of motive to fabricate, unlikelihood of faulty recollection, the degree to which the statement was against the declarant's penal interest, the relationship between the declarant and the person to whom the statement was made, whether there was a coercive atmosphere, whether it was made in response to questioning and whether the statements reflect an attempt to shift blame or curry favor (*see, People v James, supra* at 642-643). With these factors in mind, we conclude that the nature of Cancer's self-inculpatory statements, when they were made and to whom they were made, together with the absence of any motive to falsify, the absence of any coercive atmosphere and the absence of any attempt to shift blame, demonstrate that the circumstances surrounding those statements bear sufficient indicia of reliability to satisfy constitutional requirements (*see, id.* at 643).

Defendant's reliance on *People v Payne* (35 NY2d 22, 26) is misplaced for, in contrast to this case, the statements at issue in *Payne* were confessions to the police by codefendants who were jointly tried with the defendant. Confessions resulting from custodial interrogation are presumptively unreliable (*see, People v Brensic,* 70 NY2d 9, 15) and there is an added potential impact on the jury where the hearsay statements were made by "a codefendant, who stands accused side-by-side with the defendant" (*Bruton v United States,* 391 US 123, 135-136). Neither circumstance is present in this case. We also note that redaction of the statements pursuant to the rule articulated in *People v Brensic* (*supra* at 16) was not required. *Brensic* was decided on common-law evidentiary principles concerning the scope of the declaration against penal interest exception to the hearsay rule and not on the basis of the Confrontation Clause (*id.* at 14). As previously noted, defendant did not raise an objection based on common-law hearsay rules and, therefore, *Brensic* has no application to this case. In any event, the Court of Appeals has acknowledged that "[w]e have not, and should not adopt any per se rule requiring invariable redaction of the name of a co-perpetrator in any declaration against penal interest" (*People v James,* 93 NY2d at 637-638, *supra*). Accordingly, we conclude that the statements were properly admitted over defendant's Confrontation Clause objection. With regard to any unpreserved objection based on

common-law evidentiary principles, we find that defendant was not deprived of a fair trial and, accordingly, see no basis to exercise our discretionary authority to take any remedial action in the interest of justice, particularly in light of the evidence of defendant's guilt as hereinafter discussed.

Based on our review of the record we reject defendant's claim that the verdict is against the weight of the evidence. McKnight was permitted to testify without objection that he encountered defendant, Cancer and a third person on a street corner the night of the incident and that "they," referring to Cancer and defendant, told him that they had no money and were looking for a victim. Another witness, Samuel Recard, testified that during an encounter with defendant in the winter of 1995, defendant admitted his earlier involvement in a robbery and shootout with police and stated that he was going to go to North Carolina because it was "too hot" in Albany. Morrow testified that during the February 1995 incident, he looked out his bedroom window to see what was happening and saw defendant shoot at a police officer. In addition, when defendant was arrested two years later in North Carolina, the arresting officers never informed him of the charges upon which the arrest warrant was based. Nonetheless, defendant immediately stated that he did not shoot at the police and that he was in the hospital at the time of the shooting, an alibi which proved to be false.

Although much of the evidence linking defendant to the robbery and shooting depended upon the credibility of the testimony of Morrow, McKnight and Recard, convicted felons, our review of the record does not reveal that their testimony was manifestly untrue, physically impossible or contrary to human experience and, therefore, we will not consider the testimony incredible as a matter of law (*see, People v Wilson*, 256 AD2d 637, 638, *lv denied* 93 NY2d 880). Inasmuch as matters affecting the witnesses' credibility were fully explored during their testimony, the jury was in the best position to assess their credibility (*see, People v Walts*, 267 AD2d 617, 620, *lv denied* 95 NY2d 859) and the jury obviously credited the testimony which directly linked defendant to the robbery and shooting. Considering this testimony in the light of all the other evidence in the record, and according due deference to the jury's credibility determination (*see, People v Bleakley*, 69 NY2d 490, 495), we conclude that the verdict is not against the weight of the evidence (*see, id.*). We find equally without merit defendant's claim that his right to a fair trial was prejudiced by improper remarks during the prosecutor's summation (*see,*

*People v Andrews*, 274 AD2d 835, 837, *lv denied* 95 NY2d 960; *People v Corniel*, 258 AD2d 812, 815, *lv denied* 93 NY2d 968).

Lastly, with regard to defendant's challenge to the severity of the sentence, we cannot ignore that defendant attempted to kill two pursuing police officers after robbing two citizens at gunpoint. However, defendant's criminal history, though significant, is not so extensive as to justify a minimum aggregate sentence of 57½ years, which for this 33-year-old defendant is the equivalent of life imprisonment without parole. Further, while defendant's conduct was clearly egregious, it does not compare to the heinous execution-style murders in other cases which concluded with similarly lengthy sentences (*see, People v Curry*, 294 AD2d 608; *People v Walker*, 279 AD2d 696, *lv denied* 96 NY2d 869). Accordingly, we modify the sentences in the interest of justice to provide that the two prison terms for attempted murder in the first degree of 25 years to life shall each be concurrent to the other such that the aggregate sentence shall have a minimum of 32½ years and a maximum of life (*see*, CPL 470.15 [6] [b]; *People v Delgado*, 80 NY2d 780).

Peters, Mugglin and Lahtinen, JJ., concur.

Cardona, P.J. (concurring in part and dissenting in part). While I agree with the majority's disposition of the other legal issues in this case, I must respectfully disagree with my colleagues concerning the modification of defendant's sentence. Initially, it is important to note that the Legislature has made the criminal consequences more serious for the attempted murder of a police officer (*see*, Penal Law §§ 110.00, 125.27 [1] [a] [i]).

Here, as defendant was being pursued by two law enforcement officers, one of them closer to him than the other, he was directed to drop his weapon. He did not comply. Instead, he stopped, turned back and fired several shots at the closest officer. Then, in a separate act, he crouched down behind an embankment for cover and fired at the other officer. Defendant did not simply fire in the general direction of pursuing officers as he fled the scene of the robbery, he drew down on each officer individually, at separate time intervals and fired several shots which, fortuitously, missed their mark. That the officers escaped death should not inure to the benefit of defendant. In my opinion, running the attempted murder prison terms concurrently does not sufficiently recognize the severity of the two separate criminal acts.

Considering defendant's criminal record, his lack of remorse, and the severity of these crimes, I cannot say that County Court abused its sentencing discretion, nor do I discern

extraordinary circumstances warranting a modification of the consecutive prison terms imposed for his two convictions of attempted murder in the first degree. Accordingly, I would affirm defendant's sentence. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by reversing so much thereof as imposed consecutive sentences on the convictions under counts one and two of the indictment for attempted murder in the first degree; said sentences to run concurrently; and, as so modified, affirmed.