■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUDOLF BERRY, Appellant. [762 NYS2d 139] —Carpinello, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered May 19, 2002, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, criminal use of a firearm in the first degree, assault in the first degree and criminal possession of a weapon in the third degree.

Defendant stands convicted of attempted murder in the second degree, criminal use of a firearm in the first degree, assault in the first degree and criminal possession of a weapon in the third degree following an incident in the early morning hours of December 2, 1999 wherein he, while a passenger in a red Ford Mustang being driven by a companion, shot a woman near the corner of North Swan and Second Streets in the City of Albany. Following the shooting, defendant and his friend, who are both Caucasian, sped away, but were pulled over minutes later a few blocks away and ultimately arrested. Sentenced to determinate, concurrent prison terms, the maximum of which was 25 years, defendant appeals.

At issue is whether Supreme Court (Keegan, J.) erred in denying defendant's motion to suppress his written statement to police, as well as certain physical evidence, on the ground that the police did not possess reasonable suspicion to stop the red Ford Mustang that morning and whether the sentence imposed is harsh and excessive. Answering both in the negative, we affirm. We turn first to Supreme Court's denial of defendant's suppression motion.

Testimony at the suppression hearing supports a finding of reasonable suspicion justifying the stop of the vehicle in which defendant was a passenger. The pertinent facts are as follows. While on patrol in the City of Albany on the morning in question, Officer Mike Nadoraski was flagged down by a person standing in the middle of the street and advised that a woman had just been shot at the subject intersection. Nadoraski immediately broadcasted this information over his police radio. He then proceeded to that intersection and located the injured victim, who reported that she had just been shot by "[a] white man in a red car." This information was also then immediately broadcasted.

Within four minutes of these broadcasts, Detective Ronald Matos, who had monitored both transmissions, spotted a red

Mustang within a few blocks of the shooting. Upon closer inspection, Matos observed that both occupants were Caucasian men. According to Matos, the pedestrian and vehicle traffic at that precise time of the morning was "very light" and the ethnic makeup of the neighborhood was predominately African American. Based upon the two radio transmissions and his observations of its occupants, Matos pulled the Mustang over and, upon approaching the driver, smelled "burned gunpowder." When asked if there were any guns in the vehicle, the driver responded in the affirmative.

Meanwhile, another police officer, Detective Timothy Leonard, approached defendant on the passenger side of the vehicle and observed the stock end of a gun in the back seat. After being asked to exit the vehicle, defendant was in the process of being frisked by Leonard when a loaded magazine clip fell from his pant leg. Both the driver and defendant were placed under arrest. Thereafter, a 9 millimeter rifle was seized from the vehicle, and defendant ultimately confessed to being the shooter. Given these facts, the initial stop of the vehicle was justified at its inception as Matos had a reasonable suspicion that a crime had just been committed by its occupants (*see e.g. People v Banks,* 85 NY2d 558 [1995], *cert denied* 516 US 868 [1995]; *People v Private,* 259 AD2d 504 [1999]; *People v Ochsner,* 159 AD2d 435 [1990], *lv denied* 76 NY2d 740 [1990]; *cf. People v Spencer,* 84 NY2d 749 [1995], *cert denied* 516 US 905 [1995]; *People v May,* 81 NY2d 725 [1992]; *People v Nicodemus,* 247 AD2d 833 [1998], *lv denied* 92 NY2d 858 [1998]; *People v Crump,* 217 AD2d 902 [1995]).

Next, we are unpersuaded that *People v Demeritt* (291 AD2d 726 [2002], *lv denied* 98 NY2d 650 [2002]) warrants a reduction in defendant's sentence. None of the factors which compelled us to reduce the sentence in that case is present here. First, defendant intentionally fired a weapon from a distance of 10 feet at an innocent stranger as part of a premeditated shooting spree motivated, in part, out of boredom. There is also some evidence that this random spree was racially motivated. Moreover, less than one year before the subject incident, defendant had been convicted of attempted reckless endangerment in the second degree stemming from an incident wherein he fired a shotgun in the direction of a neighbor's home and struck personal property. Finally, unlike the victim in *People v Demeritt (supra),* the victim in this case was in fact seriously injured. In sum, given the callous and random nature of the crime, the fact that defendant was on a specific mission that morning to intentionally shoot someone in this particular

neighborhood and the fact that defendant had a recent conviction of similar ilk, we find the 25-year sentence to be neither harsh nor excessive (*compare People v Young,* 296 AD2d 588, 593 [2002], *lvs denied* 99 NY2d 536, 538, 541 [2002]).

Cardona, P.J., Mercure, Peters and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.