[976 NYS2d 87]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR SOTO, Appellant.

First Department, December 10, 2013

154

[REDACTED]

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Mark W. Zeno* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Rebecca L. Johannesen* and *Stanley R. Kaplan* of counsel), for respondent.

**OPINION OF THE COURT**

ACOSTA, J.

 The decision whether to admit a declaration against penal interest as an exception to the hearsay rule requires, among other factors, that the declarant be aware at the time of its making that the statement was contrary to his or her penal interest. The issue in this case is whether a statement in which an individual admits to conduct constituting an offense is a statement against penal interest, where the individual believes that the conduct may be illegal but does not know whether it is or not. It arose in the context of a DWI case where the defense was that defendant, who was intoxicated, was not the driver of the car, but a passenger. Specifically, the driver, a 19-year-old woman with no prior criminal history and only a learner permit, who met defendant approximately eight hours earlier, made a statement to a defense investigator indicating that she, and not defendant, was driving defendant's car at the time it collided with a parked car, but refused to testify at trial on Fifth Amendment grounds. We find that the statement was a declaration against penal interest notwithstanding that some of the witness's apprehension in making the statement was based on her fear that her parents would learn of her involvement with defendant or that, as the court noted, her exposure to criminal liability was relatively minor. The court therefore erred in keeping the statement out.

On July 11, 2010, at approximately 12:00 a.m., Peter Batista was sitting on the front porch of his house, when he saw a black Nissan Versa pass by four times. On the second or third pass, with the car traveling at approximately 15 miles per hour, he saw defendant in the driver's seat. According to Batista, there was no one else in the car. The porch was approximately 10 feet from the curb. After the car passed Batista's house a fourth time, it collided with a parked car approximately 50 or 60 feet further down the block.

Batista approached the driver's side of the car, which took him approximately 10 seconds. He testified that during that time, he never lost sight of the car. As he approached, he saw defendant seated in the driver's seat. The radio was turned up, and defendant was "dancing" in his seat. He stated that there was no one else in the car and no one got out of the car during

the 10 seconds it took for Batista to get from his porch to the location where the car was stopped. Batista called 911.

The police arrived five to seven minutes after the collision and arrested defendant. Police Officer Orlando Gonzalez detected a strong odor of alcohol on defendant's breath and noticed that defendant's eyes were bloodshot and watery, and his speech was slurred. A breath analysis test as well as a coordination test were administered at the station during which defendant stated "I started drinking when I got lost. I f . . . ed up. I couldn't drive for shit." The breath test revealed a blood alcohol level of .22%. The administration of this test was memorialized on videotape and that tape was played for the jury.

Defense witness Lamar Larson testified that, like defendant, he was a New York City bus driver, and had known defendant for approximately nine years. He was working the night shift and went to the Pelham Bay Diner at approximately 11:45 p.m. on July 11th to pick up something to eat during his shift. As he pulled into the parking lot, he saw defendant's car. Larson approached the car and saw defendant and a young lady in it. The young lady was in the driver's seat and defendant was in the passenger seat. Defendant got out of the car and he and Larson had a brief conversation. Larson could tell that defendant was drunk. Defendant's speech was slurred and he was unsteady on his feet. After this brief conversation, defendant got back into the passenger seat of the car. Larson leaned into the car and said "make sure he gets home safe." The female responded that she would. Larson saw the car leave the parking lot with the female driving it.

On July 22, 2010, approximately two weeks after the accident and seven months before the trial, Janny Hunt told defendant's investigator that she was the driver of the car at the time of the crash. The investigator wrote out a statement based on what Hunt had told her and Hunt signed it. In her written statement, Hunt described meeting defendant on the bus he drove; agreeing to meet him that evening; getting picked up in his car; and going to a diner, where, after Hunt agreed to drive so that defendant could drink, defendant consumed four mixed drinks and two beers. After leaving the diner, the two met defendant's friend Lamar in the parking lot and Lamar asked Hunt to drive defendant home safely. She agreed, but a short time later, took a turn "too fast" and hit the parked Impala. Hunt further stated that after she and defendant got out of the car, defendant yelled and cursed at her.

"I got scared. I was like, 'oh shit.' It was late. My parents didn't know I was out with [defendant]. I was scared of the whole situation. I said to [defendant] 'I have to go I'm sorry. I can't talk to you now. I can't talk to someone who's been drinking.' [Defendant] was busy looking at his car and he waved me to leave."

Hunt took a cab home. About a week later, Hunt saw defendant on a public bus. He told her he had been arrested probably because they thought he was driving. He asked her to help him out and she agreed.

Defense counsel had indicated in his opening statement that he would call Hunt as a witness. During the trial, the prosecutor suggested that the court appoint an attorney for Hunt because her anticipated testimony would be an admission to "[l]eaving the scene of an accident and also a traffic infraction." The court agreed and appointed an attorney.

Anticipating that Hunt would invoke her right to remain silent, defense counsel asked the People to grant Hunt immunity and indicated that if the People refused, he would move to dismiss the charges. Counsel argued that since the witness was the sole source of material, exculpatory information, granting Hunt immunity was necessary to protect defendant's right to a fair trial. The court stated that defendant was free to call Hunt as a witness, and that she was free to invoke the Fifth Amendment right against self-incrimination. The court further stated that it did not "see that the People are going to . . . give her immunity if she, in fact, committed this crime instead of your client." After indicating that it was not inclined to grant defendant the remedy he was seeking should the People refuse to grant immunity, the court stated that the issue could be revisited.

After the close of the People's case, and after Larson had testified, Hunt's attorney invoked the Fifth Amendment on her behalf. Defense counsel then asked the prosecutor to grant Hunt transactional immunity, but the People refused to do so.

Defense counsel asked the court to dismiss the case against defendant. Counsel argued that in light of Hunt's invocation of her Fifth Amendment rights and the refusal of the prosecutor to grant immunity, proceeding with the trial would violate defendant's rights to due process and to put on a defense. The court declined to grant the application to dismiss.

Defense counsel then requested that Hunt's statement be admitted as a declaration against penal interest. Focusing on

whether Hunt's statement satisfied the requirement that the declarant be aware that her statement was against her penal interest at the time she made it, the court ordered a hearing outside the presence of the jury, at which the investigator who took Hunt's statement, would testify.

The investigator testified that Hunt met with her on July 22, 2010. Hunt first gave a verbal account of her actions on the evening of the accident, after which the investigator asked her if she could take some notes, and if Hunt would sign the notes "as her words." Before the statement was prepared, Hunt expressed concern that "she would potentially get in trouble for the things she was saying." The investigator testified that Hunt asked her "again and again" if she was a lawyer, and "asked if I could put her in touch with a lawyer." "She told me she wanted to ask a lawyer the questions that I couldn't answer for her."

The investigator did not tell Hunt "anything about the specific trouble she might get into," but told her that she would give her defense counsel's telephone number. The investigator did not mention Vehicle and Traffic Law § 600—which prohibits leaving the scene of an accident—or driving without a license. Despite her concerns, Hunt agreed to let the investigator record her account in a written statement. After the statement was written down, Hunt reviewed it and signed it.

> The following exchange occurred on redirect examination:
>
> "Q. When Ms. Hunt first came into the office and sat down with you before anything was ever written to you at this point, did she have any concerns that she expressed to you? . . .
>
> "A. . . . [A]t the beginning of the statement, no she did not express any concerns. They came out at the end.
>
> "Q. Then at the point where she expressed those concerns to you, what specifically did she say that she was concerned about?
>
> "A. She asked if she could get in trouble for the accident. She asked she was concerned about her parents kind of finding out about the accident because she was in the car. She wasn't driving her own car. And just generally like how much trouble [s]he can get into.

"And—I said that I was unaware of that and I could advise her to go to another attorney."

After discussion with counsel, the court expressed the view that the statement did not meet the requirement that the declarant be aware, at the time of the declaration, that the statement was against her penal interest:

> "I think the whole hearsay question depends upon the assurance of reliability that comes from the person's awareness that what they are saying could get them in trouble of the law. You don't have that counsel.

> "[With] your own witness's testimony, you don't have any expression of that awareness until after the statement is given."

The court found that under these circumstances the "reliability assurance that you have in a statement against penal interest" was not present.

After considering further argument, the court ruled that Hunt's statement was not admissible under the hearsay exception, relying on *People v Maerling* (46 NY2d 289 [1978]), for the proposition that "the interest which the declaration compromises must be one of sufficient magnitude or consequence to the declarant to all but rule out any motive to falsify" (*id.* at 298). The court noted that the court itself had to look up the Vehicle and Traffic Law provision regarding leaving the scene of an accident where there is only property damage. The court observed that "[t]he cases where declarations against penal interest come in . . . are of a[n] enormous magnitude, admissions to murder, admissions to being an accomplice, admissions to possessing dynamite." Further, the court concluded, "I do not believe that she, either at the time she made it or even immediately following, assuming that that's considered contemporaneous, was aware that her declarations could expose her to prosecution for a traffic offense."

Defendant was ultimately convicted of aggravated driving while intoxicated and driving while intoxicated after several days of deliberations.

The rationale for the admission of declarations against penal interest "is that such assurance flows from the fact that a person ordinarily does not reveal facts that are contrary to his own interest" (*People v Maerling*, 46 NY2d at 295).

"[B]efore statements of a nontestifying third party are admissible as a declaration against penal interest, the proponent must satisfy the court that four prerequisites are met: (1) the declarant must be unavailable to testify by reason of death, absence from the jurisdiction, or refusal to testify on constitutional grounds; (2) the declarant must be aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant must have competent knowledge of the underlying facts; and (4) there must be sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability" (*People v Brensic*, 70 NY2d 9, 15 [1987]; *see People v Ennis*, 11 NY3d 403, 412-413 [2008], *cert denied* 556 US 1240 [2009]).

Third-party statements used against the accused are subject to a stricter standard (*Brensic* at 15; *see People v Deacon*, 96 AD3d 965, 968 [2d Dept 2012], *appeal dismissed* 20 NY3d 1046 [2013]), and "testimonial" declarations against penal interest, such as a plea allocution of a nontestifying codefendant used to implicate defendant are *Crawford v Washington* (541 US 36 [2004]) violations and therefore inadmissible (*see People v Hardy*, 4 NY3d 192, 194 [2005]). "[D]eclarations which exculpate a defendant [however] . . . are subject to a more lenient standard, and will be found 'sufficient if [they] establish[ ] a reasonable possibility that the statement might be true' " (*People v Deacon*, 96 AD3d at 968, quoting *People v Settles*, 46 NY2d 154, 169-170 [1978]; *see also People v McFarland*, 108 AD3d 1121 [2013]). "Depriving a defendant of the opportunity to offer into evidence another person's admission to the crime with which he or she has been charged, even though that admission may only be offered as a hearsay statement, may deny a defendant his or her fundamental right to present a defense" (*People v Deacon*, 96 AD3d at 968 [internal quotation marks omitted]).

Here, we find that all four factors were satisfied. The first and third factors are straightforward. Hunt, exercising her Fifth Amendment right, refused to testify at trial and was therefore unavailable. With respect to the third factor, Hunt stated that she was present and therefore had competent knowledge of the underlying facts.

Contrary to the dissent, the second factor, although more problematic, was also satisfied. In this regard, we hold that regardless of whether Hunt was specifically aware that the

conduct she admitted constituted a violation of Vehicle and Traffic Law § 600, which prohibits an operator of a motor vehicle who causes property damage from leaving the scene, or whether she was specifically aware that she faced a penalty of up to 15 days' imprisonment and a fine for that offense, the evidence established that her statement satisfied this hearsay exception. Her expressions, at the time of or immediately after her statement, of apprehension that she could get in trouble for her conduct, including repeated inquiries about consulting with a lawyer, sufficed to satisfy the requirement that "the declarant must be aware at the time of its making that the statement was contrary to his [or her] penal interest" (*People v Brensic*, 70 NY2d at 15).

■ The court thus improperly placed too much weight on the fact that Hunt did not express concerns about the consequences of her statement until she made it to the investigator. Not only is it unreasonable to conclude—based on exactly when they were expressed—that the concerns that prompted Hunt to repeatedly inquire about consulting a lawyer materialized after she told the investigator her story but were absent minutes before, the court's understanding that Hunt did not express any concerns until after she signed the statement is not accurate. The investigator's testimony indicates that Hunt first expressed concerns after giving her verbal account but before the preparation and signing of the statement. In any event, the timing of Hunt's expressions of concern do little to undermine the inference that she had the apprehensions when she arrived for the interview.

■ The court also erred with respect to the final factor. This "determination involves a delicate balance of diverse factors and is entrusted to the sound judgment of the trial court, which is aptly suited to weigh the circumstances surrounding the declaration and the evidence used to bolster its reliability" (*Settles*, 46 NY2d at 169). Had the trial court applied the more lenient standard for declarations that exculpate a defendant, our task would have been limited to whether the court abused its discretion in finding the declaration unreliable. The court, however, stating that "the interest which the declaration compromises must be one of sufficient magnitude or consequence to the declarant to all but rule out any motive to falsify," applied the stricter standard for declarations against penal interest used to implicate the defendant (*see People v Brensic*, 70 NY2d at 15). We thus review this factor de novo. Applying the more lenient

standard, there was competent evidence independent of the declaration to assure its trustworthiness inasmuch as defense witness Larson testified to seeing defendant with a young lady on the night of the accident who had agreed to drive because defendant was intoxicated, and testified that he saw her drive off with defendant as the passenger. Under the more lenient standard, there was a reasonable possibility that her statement might be true.

Quoting *Settles*, the dissent notes that with respect to this factor, "[t]he crucial inquiry focuses on the intrinsic trustworthiness of the statement as confirmed by competent evidence independent of the declaration itself" (*Settles* at 169), but then ignores Larson's independent evidence that he saw a female driving the car because defendant was too intoxicated to drive. Instead, the dissent focuses on the fact that the penal interest to which Hunt exposed herself was a minor traffic infraction rather than a violent crime. Although Hunt did not know the specific criminal charges she was exposing herself to, the record is clear that she was in fact very concerned about *any* exposure. In any event, declarations against penal interest are not limited to statements that declarants make about a violent crime. Defendant satisfied all four elements and was therefore entitled to have the statement admitted into evidence.

■ Furthermore, contrary to the dissent, this statement went to the core of defendant's defense and its exclusion was not harmless. Hunt's statement would have rendered Larson's testimony that a woman was driving more credible, especially since that woman was willing to clear defendant at her own expense.

In light of the foregoing, we find it unnecessary to reach defendant's remaining contentions.

Accordingly, the judgment of the Supreme Court, Bronx County (Megan Tallmer, J.), rendered March 10, 2011, convicting defendant, after a jury trial, of aggravated driving while intoxicated and driving while intoxicated, and sentencing him to concurrent terms of three years' probation, and a $1,000 fine, should be reversed, on the law, and the matter remanded for a new trial.

CLARK, J. (dissenting). The trial court properly excluded the witness' written statement, where, as here, evidence at the hearing established that the declarant was not aware that the statement was adverse to her penal interest at the time it was

made, and the statement was not sufficiently reliable. Therefore, I would affirm the decision of the trial court excluding the witness' statement because it does not qualify as a declaration against penal interest.

The admission of a declaration against penal interest requires the following: (1) the declarant must be unavailable; (2) the declarant must be aware when making a statement that it is adverse to penal interest; (3) the declarant must have competent knowledge of the facts; and (4) there must be independent proof indicating that the statement is trustworthy and reliable (*see People v Brensic*, 70 NY2d 9, 15 [1987]).

This appeal turns primarily on the determination of the second factor. As to the second factor, the primary issue is whether Janny Hunt was aware at the time of making her statement that it was contrary to her penal interest. The majority finds that Hunt's expressions of apprehension, at the time of or immediately after her statement, along with an inquiry about consulting a lawyer sufficed to satisfy the hearsay requirement. I disagree with this line of reasoning because it does not comport with the record, or the law on this issue.

The record established that Hunt did not articulate any apprehension about her statement at the time she made it. The investigator, Chelsea Amelkan, testified that Hunt made an appointment to meet at her office, and "at the beginning of the statement, . . . she did not express any concerns." Hunt's concerns were made known to the investigator after their conversation was complete. Then, Amelkan asked if she could write down her statement and have Hunt sign it. Subsequently, Hunt asked "if she could get in trouble for the accident . . . . [S]he was concerned about her parents finding out about the accident because she was in the car . . . . And just generally like how much trouble [s]he can get into." Amelkan responded that she could speak to a lawyer. Given the succession of events leading to Hunt's expressions of concern and the paucity of her understanding about the consequences of her statement, it was well within the trial court's discretion to find that the witness was not aware at the time of its making that the statement was against her penal interest.

Again, Hunt expressed general concerns showing that "she did not know if she could get in trouble" and inquiring whether her parents would find out about the accident. Hunt's concern about her parents finding out was so pressing that her statement to the investigator about the accident declares, "I got

scared. . . . It was late. My parents did not know I was with [defendant]." At no point in her statement to the investigator did Hunt ask if she committed a crime or if she could be subject to arrest. This casts significant doubt as to Hunt's awareness of penal consequences attached to her statement since the focus of her concern is parental disappointment rather than the exposure to criminal liability. Further, it is unclear what kind of "trouble" concerns Hunt in light of her explicit concern about whether her parents would find out about the accident. Thus, considering Hunt's vague expression of concern and the concern about her parents, the trial court properly determined that Hunt was not aware of the penal consequences at the time the statement was expressed or written down.

The majority argues that regardless of the timing, Hunt was aware of her apprehensions when she arrived for the interview with the investigator. Nevertheless, it is equally probable that Hunt only became concerned about any possible consequences once it became known that the statement would be recorded and required a signature. To this point, timing is at the heart of the issue. Contemporaneous indications of concern preceding or during a statement would ensure reliability and satisfy the second factor which requires awareness at the time the statement is made. However, in this matter, the indications of apprehension are expressed after the statement is recorded, which does not ensure reliability.

In evaluating the fourth factor, which places trustworthiness and reliability at issue, I agree with the majority that the trial court erred in applying a stricter standard as part of its analysis. However, even under the more lenient standard where the proponent must "establish[ ] a reasonable possibility that the statement might be true," the record does not contain sufficient competent evidence to assure trustworthiness and reliability of Hunt's statement (*People v Deacon*, 96 AD3d 965, 968 [2d Dept 2012], *appeal dismissed* 20 NY3d 1046 [2013], quoting *People v Settles*, 46 NY2d 154, 169-170 [1978] [internal quotation marks omitted]).

"The crucial inquiry focuses on the intrinsic trustworthiness of the statement as confirmed by competent evidence independent of the declaration itself" (*People v Settles*, 46 NY2d at 169). Here, the intrinsic trustworthiness of Hunt's statement is questionable as it involves the potential exposure to a minor traffic infraction and, unlike the situation where a defendant confesses to a violent crime, the penal consequences resulting

from the statement are not obvious, especially to a 19 year old with no criminal history. The record shows surrounding circumstances where Hunt did not know if her conduct constitutes an illegal offense. Hunt's statements of apprehension primarily concerned whether her parents would find out about this matter and if she could get in trouble. Further, her apprehension was not contemporaneous with the statement, but rather, a product of the request to provide a signature on a transcription of her statement. Moreover, Hunt's motive for coming forward was admittedly to "help out" defendant. Notwithstanding Lamar Larson's testimony that a female was seen with defendant during the evening of the incident, based on the facts and surrounding circumstances detailed above, the statement was properly excluded because there is no assurance of trustworthiness or reliability in Hunt's statement.

Additionally, even if the failure to admit the statement was error, the exclusion was harmless as it did not violate due process. Defendant was able to present his defense through the testimonial observations of his witness, Lamar Larson, who testified that he saw a female in the driver's seat leaving the Pelham Bay Diner parking lot with defendant in the passenger seat. Defense counsel's summation quoted at length Larson's statement at the parking lot and the response: "Make sure he gets home safe." "I will." The record also indicated that Hunt exercised her Fifth Amendment rights. As such, defendant was able to present the jury with facts supporting his defense that someone else was driving the vehicle.

Accordingly, I would affirm the conviction because the statement does not qualify as a declaration against penal interest, it was not trustworthy or reliable, and even if the failure to admit it was error, the exclusion was harmless.

SAXE and FREEDMAN, JJ., concur with ACOSTA, J.; MAZZARELLI, J.P. and CLARK, J., dissent in a separate opinion by CLARK, J.

Judgment, Supreme Court, Bronx County, rendered March 10, 2011, reversed, on the law, and the matter remanded for a new trial.